

# THE ATTORNEY GENERAL
# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

**AUSTIN, TEXAS**

May 1, 1947

Hon. Otis E. Lock
Chairman
Committee of Highways
  & Roads
House of Representatives
Austin, Texas

Opinion V-175

Re:  Constitutionality of
H. B. 509, Fiftieth
Legislature

Dear Sir:

Reference is made to your inquiry concerning the constitutionality of H. B. 509. Sections 2 and 3 of the bill are as follows:

"Sec. 2. It shall be unlawful for any person, firm or private corporation to establish, maintain or operate a junk yard or junk shop within thirty-five yards of any public highway, or to permit such junk yard or junk shop to remain within thirty-five yards of any public highway, except and unless such junk yard or junk shop is effectively screened and hidden from view from such public highway by fences or structures, or evergreen shrubs or other vegetative material.

"Sec. 3. Any violation of this Act by any person, firm or private corporation, shall upon conviction, subject the offender to a fine of not less than Ten Dollars ($10) and not more than Two Hundred Dollars ($200), and each day of any such violation shall be treated as a separate offense."

Although Section 2 is couched in prohibitory language, it is in reality a regulatory and not a prohibitory law. The Act does not purport to make a junk yard or junk shop a public nuisance. It merely purports to regulate the business of operating a junk yard or junk shop within 35 yards of a public highway to the limited extent of requiring that the junk yard or junk shop be hidden from view of such public highway. The question is whether or not this is a proper exercise of police power and this question is resolved by a determination as to whether or not such a regulation of a

person's property or business amounts to "taking" thereof in violation of Sec. 19, Article I of the State Constitution and the fourteenth amendment to the Federal Constitution.

We approach this question with serious concern for several reasons. There is nothing in either the State or Federal Constitutions, as such, which prohibits a law of this character, and the ultimate question for decision involves a balancing of interests between the individual and his right to use his property as he sees fit, and the rights of the general public as represented by the Legislature. The question in the last analysis is purely one of reasonableness of the regulation in so far as it affects property rights and its relationship to a public purpose in so far as it affects the public.

In Lombardo v. City of Dallas, 47 S. W. (2d) 495, the Dallas Court of Civil Appeals, at page 497, said:

"While the power of states and cities acting under State authority, to enact zoning regulations is now generally recognized, doors are left open in all such enactments for the contention to be made that the regulations prescribed, as applied to a particular situation, are unreasonable, arbitrary or discriminatory."

This is the test which must be applied in determining the validity of any statute or ordinance which has been challenged on the ground that it deprives a person of his property without due process of law. 9 Tex. Jur. 572.

A similar question to the one involved here was passed on by the Supreme Court of Indiana in General Outdoor Advertising Company v. City of Indianapolis, 127 N. E. 309. An ordinance of the city of Indianapolis prohibited the maintenance and operation of advertising signs or billboards located within 500 feet of certain parks and boulevards. Suit was brought to enjoin the Board of Park Commissioners of the city from enforcing the ordinance. The court upheld the validity of the ordinance as applied to billboards erected after it was passed, but refused to enforce the ordinance against billboards existing at the date of its enactment. This distinction, referred to as a non-conforming use, finds

support in the Texas cases.  City of San Angelo vs.
Boehme Bakery (Sup. Ct.) 190 S. W. (2d) 67.  Lom-
bardo vs. City of Dallas 47 S. W. (2d) 495, 497,
affirmed.  73 S. W. (2d) 475.

On the general proposition, however, that
the Indianapolis ordinance was valid when applied
prospectively, the Supreme Court of Indiana, in the
above styled case said:

"Under a liberalized construction
of the general welfare purposes of state
and Federal Constitutions there is a trend
in the modern decisions (which we approve)
to foster, under the polic power, an aesth-
etic and cultural side of municipal devel-
opment--to prevent a thing that offends the
sense of sight in the same manner as a thing
that offends the senses of hearing and smel-
ling.  3 McQuillen, Mun. Corps. (2d) 1049;
Ware vs. Wichita, 113 Kan. 153, 157, 214,
p. 99; State ex rel. Civello v. New Orleans
(1923) 154 La. 271, 97 So. 440, 33 A. L. R.
260; State ex rel. Carter vs. Harper (1923)
182 Wis. 148, 158, 196 N. W. 451, 33 A.L.R.
269; Cochran v. Preston (1908) 108 Md. 220,
70 A. 113, 23 L.R.A. (N.S.) 1163, 129 Am.
St. Rep. 432, 15 Ann. Cas. 1048. . . . "

"As social relations become more com-
plex, restrictions on individual rights be-
come more common.  Restrictions which years
ago would have been deemed intolerable and
in violation of the property owners' consti-
tutional rights are now desirable and neces-
sary, and zoning ordinances fair in their re-
quirements are usually sustained.  Village of
Euclid v. Ambler, Realty Co. (1926) 272 U.S.
265, 47 S. Ct. 114, 71 L. Ed. 303, 54 A.L.R.
1016; Building Inspector v. Stocklosa (1924)
250 Mass. 52, 145 N. E. 262, 264; State v.
Houghton (1925) 164 Minn. 146, 150, 204 N.W.
569, 54 A.L.R. 1012; State v. Roberson (1929)
197 N. C. 657, 150 S. E. 194; Miller v. Board
of Public Works (1925) 195 Cal. 477, 234 P.
381, 38 A.L.R. 1479; Pritz v. Messer (1925)
112 Ohio St. 628, 149 N. E. 30.  A preponder-
ant majority of the courts of the several

states have upheld the validity of the
so-called city planning or zoning laws
which create restricted residence dis-
tricts and prevent the establishment
of business enterprises therein.  It is
stated in McQuillen, Mun. Corp. (2d)
369-375 that seventeen out of twenty-six
states hold them valid, and an examina-
tion of the cases decided subsequent to
the preparation of that text shows that
they are now held valid in at least thir-
ty out of thirty-three states wherein the
question has been considered. . .  Under
the laws and ordinances of this character
many regulations and limitations of struc-
tural design and property use have been
upheld which bear no closer relation to
the public safety, health, morals and gen-
eral welfare, or public comfort, conven-
ience, and prosperity (which latter terms
are also included in the recent cases, 3
McQuillen, Mun. Corp. (2d) p. 355), than
does the ordinance concerning billboards
in the instant case, 43 C. J. 333-345."

See also Article by Henry P. Chandler of
the Chicago Bar entitled "The Attitude of the Law
Toward Beauty" appearing in the August 1922 issue
of the American Bar Association Journal.

In passing on a question of this character,
the Attorney General should act with extreme caution.
Chief Justice Cureton expressed this same thought in
Lombardo v. City of Dallas, 73 S. W. (2d) 475, at
486, when he said:

"In passing upon the validity of an
act or an ordinance affecting the public,
such as those before us, our duty is one
of serious consideration, for, as said by
Texas Jurisprudence (vol. 9, p. 466 ¶ 49):
'One of the most delicate duties to be per-
formed by the judicial branch of the govern-
ment is that of declaring an act of the leg-
islative department to be unconstitutional
and invalid.  The power of the courts in
this respect is one that will be exercised
with great caution, especially where the

matters in controversy pertain to govern-
mental policies, the public health and pub-
lic utilities. The court must necessarily
cover the same ground as that which has al-
ready been covered by the Legislative depart-
ment, and it must indirectly overrule the
decision of that co-ordinate department.'"

In view of the fact that the Highway Depart-
ment spends thousands of dollars annually for beauti-
fication of the public highways, the Attorney General
cannot say that this bill, which has for its purpose
the same ultimate aim, is an unreasonable regulation
of private property when applied prospectively.

## SUMMARY

H. B. 509, 50th Legislature, provid-
ing for screening of junk yards within
35 yards of a public highway, if enacted,
will be valid as applied to junk yards or
junk shops thereafter established but in-
valid as applied to junk yards or junk
shops existing on the date it is enacted
into law.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By *James T. Bryan*

James T. Bryan
Assistant

JTB:mmc:mrj

APPROVED MAY 1, 1947

*Price Daniel*

ATTORNEY GENERAL